STRAUGHAN *v.* TUCKER.

Opinion delivered April 28, 1894.

*Gift—Delivery.*

A mother, having $1800 loaned out and secured by deed of trust, directed the trustee to credit the mortgage with the sum of $1200, which she desired to give to her infant son, and the trustee gave her a receipt acknowledging that he had received that amount of money for her son, to secure the payment of which a second deed of trust was executed by the borrower.  *Held*, that there was a sufficient delivery, and that the gift was not revocable.

Appeal from Lawrence Circuit Court in Chancery, Eastern District.

JAMES W. BUTLER, Judge.

---

*NOTE.—In respect to the validity of contracts made by foreign corporations before compliance with statutory conditions of permission to do business in the State, see note to *Edison General Electric Co.* v. *Canadian Pac. Nav. Co.* (Wash.), 24 L. R. A.   (Reporter.)

*Sam W. Williams* for appellant.

1. This was an executory contract—the gift was incomplete and revocable. 1 Wait, Ac. & Def. 74; 7 Johns. (N. Y.) 26; 2 *id.* 52; 2 Vesey, 431; 44 Ark. 42; 107 U. S. 602; 114 Mass. 30; 43 Ark. 319; 1 *id.* 83; 23 N. Y. 69; 9 Oh. St. 74; 11 Ark. 250; 17 Wis. 512; 10 Ark. 211; 1 Tex. 161; 53 Pa. St. 108; 1 Dev. (N. C.) L. 309; 8 Am. & Eng. Enc. Law, 1314, note 6, etc; 18 S. W. Rep. 1139; 17 *id.* 161; 16 *id.* 201; 13 *id.* 170; 13 *id.* 1101.

2. Tucker stood in a confidential relation to appellant, and used undue influence in procuring the contract. Bailey's Onus Probandi, 319; 2 White & Tudor's Lead. Cases in Equity, 406 and notes; 3 Jones, Eq. (N. C.) 152; Kerr on Fraud and Mis. 192–3; 49 Ark. 367; 11 S. W. Rep. 239.

*J. K. Gibson* and *Jno. M. Moore* for appellees.

1. The gift was complete and irrevocable. 50 N. W. Rep. 503; 43 Ark. 319; 18 S. W. 517; 6 Tex. 45; 31 *id.* 139; 11 So. Rep. 758; 52 N. W. Rep. 1131; 81 Ky. 425; 5 Bush, 591; Thornton on Gifts, secs. 195–6; Mechem, Agency, secs. 295–6, 304, 311; 44 Ark. 45; 2 Vesey, Sr. 431, commented on in Thornton, Gifts, secs. 270–1, and note 4, p. 174.

2. The evidence fails to show undue influence. 2 Wh. & Tud. L. C. in Eq. marg. p. 581, notes, top p. 1174 of Am. Ed.; *ib.* top p. 1194, and cases cited; 49 Ark. 367.

BATTLE, J. Robert A. Straughan was the head of a family, consisting of a wife, J. A. Straughan, and a child, Charles Straughan. He and F. W. Tucker were friends. On his death-bed he sent for Tucker, to confer with him as to his worldly affairs. At Tucker's instance he made a will, by which he bequeathed and devised to his wife all his property, both real and per-

sonal. He often requested his wife to confer with
Tucker, after his death, in all business affairs, and to
follow his advice. He died leaving the will unrevoked,
and his wife and child surviving him. He left to his
wife $2000 in money, a farm of the annual rental value
of $125, a horse and cow, and a residence, which was a
two-story framed building, with five rooms reasonably
supplied with furniture, and a stable worth $500 or $600.

Mrs. Straughan delivered to Tucker $1800 of the
$2000 to loan for her, which he did by lending it to Ja-
cob S. Allison at eight per cent. per annum interest;
Allison conveying a valuable farm, worth $8000, to
Tucker in trust to secure the payment of the same.
Tucker retained the mortgage securities.

Some time during her widowhood, Mrs. Straughan
promised the grandmother of her son, Charles, that she
would, in the event she contracted a second marriage,
convey the farm to him. In January, 1891, when she
was contemplating an early marriage, she sent for
Tucker. He called to see her, and they talked about
business. He told her she ought, before she married, to
make some provision for her son, Charles. She said that
she thought so too, and asked what she had better give—
money or the farm—and said that his grandmother
wanted her to give him the farm, but she thought the
money was better for him, and asked how much she
ought to give; and Tucker replied one-third of her
estate, which was ten or twelve hundred dollars. He
left her, and promised to return on the second day there-
after, when she could finally decide what she would do.
He did so, and she executed to him an instrument of
writing, by which she authorized and directed him to
credit the deed of trust executed by Allison with $1200
which she had given her son, Charles, and Tucker gave
her a receipt, in which he acknowledged he had received
that amount of money for her boy, who was then about

fourteen years old. Tucker did as he was authorized, and caused Allison to convey a farm to Vinson in trust to secure the payment of the $1200 for the benefit of Charles, and Vinson accepted the trust, and the deed which created it was delivered to him.

In a few days after Allison had executed the deed of trust to Vinson, Mrs. Straughan brought this action against Tucker, Allison, Vinson and Charles Straughan to restrain Tucker from delivering the deed to Vinson, or, if delivered, to inhibit Vinson from filing it for record, and to cancel the credit of $1200, and the deed to Vinson. She alleged in her complaint that the instrument of writing which she executed had been obtained by Tucker from her by undue influence; and that he, at the time he obtained it, declared "that he would never carry out the instructions contained in said paper until plaintiff should marry;" and that the deed to Vinson had never been delivered. The defendants answered denying these allegations.

At the hearing evidence was adduced by the parties to prove the allegations in the complaint of the plaintiff, and the denials in the answers of the defendants. We will not set it out in this opinion. It is sufficient to say that we find from it that the preponderence of the evidence disproves the exercise of undue influence by Tucker, and that the instrument of writing executed by the plaintiff was not delivered on conditions; and that we find that the deed to Vinson was delivered before the bringing of this action.

A final decree dismissing the complaint was rendered in favor of the defendants; and plaintiff appealed.

During the pendency of this action the plaintiff married J. H. Brewer.

Was the gift of the $1200 complete? In *Nolen v. Harden*, 43 Ark. 319, this court said "that if the gift be intended *in presenti*, and be accompanied with

such delivery as the nature of the property will admit, and the circumstances and situation of the parties render reasonably possible, it operates at once, and as between the parties becomes irrevocable. Such delivery may be made to bailee, as effectually as to the donee in person. Upon the other hand, if there be only an intention to give and no delivery, it will be inchoate and incomplete, however strong the expression of intention may be; and the property does not pass. One is bound by his acts, but, without consideration, he is not bound to carry out his voluntary intentions, however firmly or earnestly he may express them."

Upon this point Chancellor Kent says: "Delivery in this, as in every other, case, must be according to the nature of the thing. It must be an actual delivery, so far as the subject is capable of delivery. It must be *secundum subjectam materiam*, and be the true and effectual way of obtaining the command and dominion of the subject. If the thing be not capable of actual delivery, there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion of the property. If the thing given be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed." 2 Kent, Com. (8th ed.) *439.

In this case Mrs. Straughan authorized Tucker, in writing, to credit the deed of trust which Allison had executed to him with the sum of $1200, which she had given to her son, Charles, and received from Tucker a receipt for that amount, as so much money delivered to him for that purpose. Her intention to make the gift, and to relinquish all control over the same as her property, was clearly manifested by the writing executed by her. Tucker, by his receipt, accepted the gift, and took possession thereof, on behalf of the donee. The two writings, being a part of the same transaction, conferred

upon him the authority to segregate the $1200 from the $1800 which Allison had borrowed from her and secured by deed of trust to Tucker. This authority was doubtless given for the reason that Tucker already had the mortgage executed to secure the payment of the $1800, and as an evidence of the fact that the $1200 was the property of her son. As an incident to the power given him, and the possession of the gift, it was his right and duty to secure and preserve it for the donee, whom he undertook to represent. He did so by crediting Allison, and taking the deed of trust from him, in the manner stated, and the gift passed beyond the control of the donor, and became complete, before she undertook to revoke it. *Second Nat. Bank* v. *Merrill & Houston Iron Works*, 50 N. W. Rep. (Wis.), 503; *Reynolds* v. *Reynolds*, 18 S. W. Rep. 517; *Crook* v. *First Nat. Bank*, 52 N. W. Rep. 1131; Thornton on Gifts, secs. 276, 277, and cases cited.

Decree affirmed.